# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

QURAN RICHARDSON,                       Case No. 1:13-cv-761
     Petitioner,

                            Dlott, J.
     vs.                                Bowman, M.J.

WARDEN, SOUTHERN OHIO                   **REPORT AND**
CORRECTIONAL FACILITY,                  **RECOMMENDATION**
     Respondent.

     Petitioner, an inmate in state custody at the Southern Ohio Correctional Facility, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition and respondent's return of writ. (Docs. 1, 7).

## I.    FACTUAL BACKGROUND

     The Ohio Court of Appeals set forth the following summary facts that led to petitioner's conviction and sentence:

> Calvin Lail was shot to death in an apartment building parking lot following an ambush by several men in response to an argument over a cocaine sale. Thomas Knight had accompanied Lail to the parking lot that evening. Knight sustained several gunshot wounds but survived. At trial, Knight placed Richardson at the scene, and two other state's witnesses testified that they had seen Richardson shoot Lail. The state also presented evidence that Lail had taken a cellular telephone and a gun with him to the parking lot. Neither of these items was recovered.

(Doc. 7, Ex. 16, p. 1).

## II.    PROCEDURAL HISTORY

### State Trial Proceedings

     On April 12, 2010, the Hamilton County, Ohio grand jury returned an indictment charging petitioner with aggravated murder, aggravated robbery, murder, and four counts of felonious assault. (Doc. 7, Ex. 1). Petitioner entered a not-guilty plea to the charges of the

indictment. (Doc. 7, Ex. 2).

Petitioner filed two pre-trial motions to suppress. First, petitioner moved the trial court to suppress any statements petitioner made to the police. According to petitioner, any such statements were made in violation of his right to remain silent and right to counsel. (Doc. 7, Ex. 3). The trial court granted his motion, in part, and the state elected not to play petitioner's statements that were the subject of the motion to suppress. (Doc. 7, Ex. 16, p. 4). Second, petitioner moved the trial court to suppress evidence obtained by the state via the seizure of his cell phones, which he claimed were obtained in violation of his Fourth and Fourteenth Amendment rights. (Doc. 7, Ex. 4). The trial court permitted the admission of evidence from the cell phones. (*See* Doc. 7, Ex. 16, p. 3). Petitioner also filed a pre-trial motion in limine to prohibit the use of text messages taken from a cell phone seized after his arrest, which was denied by the trial court. (*See id.*).

On February 18, 2011, following a jury trial, petitioner was found not guilty of aggravated murder, but guilty of the remaining charges. (Doc. 7, Ex. 8–10). Prior to sentencing, petitioner filed a motion for a new trial, which was denied by the trial court. (Doc. 7, Ex. 11). Petitioner was sentenced to a total aggregate prison sentence of 24 years to life. (Doc. 7, Ex. 12).

**Direct Appeal**

On May 10, 2011, petitioner, through new counsel, filed a notice of appeal to the Ohio Court of Appeals. (Doc. 7, Ex. 13). In his appellate brief, petitioner raised the following six assignments of error:

1. Defendant-Appellant's Sixth Amendment right to confront his accusers was violated when the trial court permitted the state to introduce unproven third party allegations of threats made against a material prosecution witness.

2. Defendant-Appellant was denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United

2

States Constitution as a result of the following errors committed by trial counsel: (a) failing to file a motion to suppress eye witness identification testimony; (b) failing to object to and even soliciting inadmissible material and incriminatory hearsay; (c) being unprepared.

3. The trial court abused its discretion when it admitted a photograph taken from a cell phone possessed by the defendant-appellant.

4. The trial court abused its discretion when it admitted text messages from and sent to the phone registered to defendant-appellant and text messages from the phone possessed by the defendant.

5. Defendant-Appellant was denied his constitutional right to due process of law when he was convicted of the offense of murder, aggravated robbery, and felonious assault without sufficient evidence. Moreover, the convictions were against the manifest weight of evidence.

6. The trial court erred in overruling [*sic*] Defendant-Appellant's motion to suppress his statement to the police because he had invoked his right to counsel.

(Doc. 7, Ex. 14, pp. i–ii).  The Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment on May 4, 2012.  (Doc. 7, Ex. 6).

## Ohio Supreme Court

On June 18, 2012, petitioner filed a pro se notice of appeal to the Ohio Supreme Court. (Doc. 7, Ex. 17).  He set forth the following six propositions of law in his memorandum in support of jurisdiction:

I.   A defendant's Fifth & Fourteenth Amendment due process rights to a fair trial and Sixth Amendment right to confront his accusers is violated when the trial court permits the state to introduce unproven third party allegations of threats made against a material prosecution witness.

II.  A defendant is denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments as a result of the following errors: (a) failing to file a motion to suppress suggestive eye witness identification testimony; (b) failing to object to and even soliciting inadmissible material and incriminatory hearsay; (c) being unprepared.

III. A trial court abuses its discretion in violation of a defendant's Fifth & Fourteenth Amendment due process rights to a fair trial and Sixth

3

Amendment right to confront his accusers and present a defense when it
admits a photograph taken from a cell phone possessed by the defendant.

IV.     A trial court abuses its discretion in violation of a defendant's Fifth &
Fourteenth Amendment due process rights to a fair trial and Sixth
Amendment right to confront his accusers and present a defense when it
admits text messages from and sent to the phone registered to the
defendant and text messages from the phone possessed by the defendant.

V.      A defendant is denied his right to due process when he is convicted of
murder, aggravated robbery, and felonious assault based on insufficient
evidence, and evidence that is also against the manifest weight of the
evidence.

VI.     A trial court violates a defendant's Fifth & Fourteenth Amendment due
process rights to a fair trial, to have an attorney present during
interrogation, and to not incriminate himself; and his Sixth Amendment
right to confront his accusers and present a defense when it overrules a
defendant's motion to suppress his statement to the police and the
defendant had invoked his right to counsel.

(Doc. 7, Ex. 18, pp. i–ii).  On October 10, 2012, the Ohio Supreme court declined jurisdiction and

dismissed the appeal "as not involving any substantial constitutional question."  (Doc. 7, Ex. 19).

## Federal Habeas Corpus

On October 23, 2013, petitioner filed the instant habeas corpus petition.  (Doc. 1).

Petitioner raises the following six grounds for relief in the petition:

**GROUND ONE:** The State Courts Reached Decisions that were Contrary to, or
Unreasonable Applications of, U.S. Supreme Court Case law in finding that Mr.
Richardson's constitutional rights were not violated when the state court admitted
evidence of unproved third-party allegations of threats made against a material
prosecution witness.

**Supporting Facts:** The state sought to introduce evidence of third-party
allegations that threats had been made against a material state witness.  The trial
court permitted the evidence, depriving Mr. Richardson of his right to
confrontation, right to a fair trial, right to present a defense, and right to due
process.  Mr. Richardson presented these claims in the state courts, and the state
courts failed to correct the errors despite the facts and clear Supreme Court case
law.

**GROUND TWO:** The State Courts Reached Decisions that were Contrary to, or
Unreasonable Applications of, U.S. Supreme Court Case Law in finding that Mr.

4

Richardson's constitutional rights were not violated when his trial counsel failed to take, certain action to effectively represent Mr. Richardson leading up to trial and at trial.

**Supporting Facts:** Mr. Richardson's trial counsel failed to move to suppress suggestive eye witness identification testimony. The attorney also failed to object to, and Improperly el[i]cited inadmissible material, incriminatory hearsay. The attorney was also unprepared for key state witnesses to testify at trial. The conduct of the attorney fell below an objective standard of reasonableness and, but for the errors, Mr. Richardson would have been acquitted of additional charges. Mr. Richardson presented these claims in the state courts, and the state courts failed to correct the errors despite the facts and clear Supreme Court case law.

**GROUND THREE**: The State Courts Reached Decisions that were Contrary to, or Unreasonable Applications of, U.S. Supreme Court case Law in finding that Mr. Richardson's constitutional rights were not violated when the trial court admitted a photograph taken from a cell phone Mr. Richardson possessed.

**Supporting Facts:** The state sought to introduce a photograph taken from a cell phone Mr. Richardson possessed. The trial court permitted the evidence, depriving Mr. Richardson of his right to confrontation, right to a fair trial, right to present a defense, and right to due process. Mr. Richardson presented these claims in the state courts, and the state courts failed to correct the errors despite the facts and clear Supreme Court case law.

**GROUND FOUR**: The State Courts Reached Decisions that were Contrary to, or Unreasonable Applications of, U.S. Supreme Court case Law in finding that Mr. Richardson's constitutional rights were not violated when the state court admitted evidence of text messages from and sent to a phone Mr. Richardson possessed.

**Supporting Facts:** The states sought to introduce evidence of te[x]t message from, and sent to the phone registered to Mr. Richardson. The trial court permitted the evidence, depriving Mr. Richardson of his right to confrontation, right to a fair trial, right to present a defense, and right to due process. Mr. Richardson presented these claims in the state courts, and the state courts failed to correct the errors despite the facts and clear Supreme Court case law.

**GROUND FIVE:** The State Courts Reached Decisions that were Contrary to, or Unreasonable Applications of, U.S. Supreme Court Case Law in finding that Mr. Richardson's constitutional rights were not violated when he was convicted despite insufficient evidence to prove guilt beyond a reasonable doubt.

**Supporting Facts:** The state's evidence presented to the jury against Mr. Richardson failed to support the verdict as to each conviction beyond a reasonable doubt. Mr. Richardson presented these claims in the state courts, and the state

courts failed to correct the errors despite the facts and clear Supreme Court case law.

**GROUND SIX:** The State Courts Reached Decisions that were Contrary to, or Unreasonable Applications of, U.S. Supreme Court Case Law in finding that Mr. Richardson's constitutional rights were not violated when the state court overruled his motion to suppress statements he made to police after he invoked his right to counsel.

**Supporting Facts:** Mr. Richardson invoked his right to counsel when questioned by police. The police nevertheless questioned Mr. Richardson, leading to arguably inculpatory statements. Mr. Richardson's counsel moved to suppress the statements. The trial court overruled the motion and permitted the jury to hear the inadmissible statements. Mr. Richardson presented these claims in the state courts, and the state courts failed to correct the errors despite the facts and clear Supreme Court case law.

(Doc. 1).

Respondent has filed a return of writ opposing the petition. According to respondent, petitioner's grounds for relief are procedurally defaulted or without merit.

## III.    THE PETITION SHOULD BE DENIED.

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional claims that were raised to and decided by the Ohio courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state

court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* [562] U.S. [86], 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court more recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786.  In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44–45 (2011); *cf. Otte*, 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71–72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision").  Decisions by lower courts are relevant only "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).  The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

**A.  Ground One is without Merit.**

In Ground One, petitioner claims he was deprived of his right to confront witnesses against him when the state court admitted third-party allegations that threats had been made against a material state witness.  (Doc. 1, p. 6).

At trial, Thomas Knight—a witness who placed petitioner at the scene of the shootings (Doc. 7, Transcript at PageID 888)—was permitted to testify that he believed that something would happen to his family and that he would be killed as a result of testifying.  Knight did not identify the source of the fear or any individual(s) who threatened him.  (*Id.* at PageID 904–909).  Consequently, petitioner contends that he was unable to cross-examine or confront the source of the threats.  On this basis, he argues that he was deprived of his rights to confront the witnesses against him.

Petitioner raised his Confrontation Clause claim on direct appeal.  In overruling the assignment of error, the Ohio Court of Appeals found that no violation occurred because the alleged threats were non-testimonial:

> In Richardson's first assignment of error, he asserts that his Sixth Amendment right to confront his accusers was violated when the trial court allowed Knight to testify that he feared reprisal for appearing in court as a state's witness.  These statements were non-testimonial.  Therefore, there was no Sixth Amendment violation.  We overrule this assignment of error on the authority of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) and *State v. Minor*, 1st Dist. No. C-060043, 2007-Ohio-312.

(Doc. 7, Ex. 16, p. 2).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  In *Crawford v. Washington,* 541 U.S. 36, 51, 53-54 (2004), the Supreme Court held that this provision, which is applicable "to 'witnesses' against the accused—in other words those who 'bear testimony,'" bars the "admission of testimonial statements of a witness who did not appear

at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination."  The Court described the class of testimonial statements covered by the Confrontation Clause as follows:

> Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309–310 (quoting *Crawford*, 541 U.S. at 51-52).  Although the *Crawford* Court refused to "definitively resolve" whether the Confrontation Clause applies outside the context of "testimonial statements," *see id.* at 61, the Court later expressly held that the Confrontation Clause applies only to testimonial hearsay.  *Davis v. Washington,* 547 U.S. 813, 821, 823–34 (2006).  "[A]dmission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause.  Instead, the statement must be used as hearsay—in other words, it must be offered for the truth of the matter asserted." *United States v. Pugh,* 405 F.3d 390, 399 (6th Cir. 2005) (citations omitted).

In this case, the Ohio Court of Appeals reasonably determined that petitioner's claim was without merit.  As an initial matter, it appears clear from the record that there were no third party comments presented to the jury that would raise issues under the Confrontation Clause.  Knight testified that he generally feared for his and his family's safety as a result of testifying and not about any specific threat or comments of a third party.  In fact, Knight specifically testified that petitioner did not contact him and threaten him.[1]  (Doc. 7, Transcript at PageID 924–25).

---

[1] Knight testified that he was not sure whether anyone related to petitioner contacted and threatened him.  (*Id.* at PageID 925).

Although it appears that his testimony was based upon alleged phone calls made to Knight prior to trial, these details were raised in a sidebar and not presented to the jury.

In any event, the trial court issued a limiting instruction indicating that any such evidence was only relevant to the credibility of Mr. Knight's testimony, and not offered for the truth of the statements:

> . . . I'm going to advise the jury that you're about to hear evidence which can only be weighted—to weigh for the purpose of evaluating the credibility of this witness, his reason and intent and motive for being here to testify today, not whether the contents of it is true or not, but the effect on this witness and whether he's telling the truth today as a witness.

(*Id.* at PageID 908). Because the contested threats were not used as hearsay or, in other words, were not offered for the truth the matter asserted, the Ohio Court of Appeals reasonably determined that the statements were non-testimonial and therefore did not implicate the Confrontation Clause. Petitioner has thus failed to demonstrate that the Ohio Court of Appeals decision was contrary to or an unreasonable application of Supreme Court precedent and is not entitled to habeas relief based on Ground One of the petition.

## B. Ground Two is without merit.

In Ground Two, petitioner claims that his trial counsel was ineffective for failing to file a motion to suppress eyewitness identification, for failing to object to hearsay testimony and eliciting prejudicial hearsay testimony on cross-examination, and for counsel's alleged unpreparedness for key state's witnesses testifying at trial. (Doc. 1, p. 8). Petitioner raised his ineffective assistance of counsel claims on direct appeal. The Ohio Court of Appeals overruled the assignment of error, reasoning as follows:

> There is no indication in the record that there was a reasonable basis for filing a motion to suppress eyewitness identification testimony. We therefore find that this argument has no merit. See *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538

11

N.E.2d 373 (1989); *State v. Drummond*, 111 Ohio St.3d 14, 2006-0hio-5084, 854 N.E.2d 1038, 208. And despite Richardson's assertions to the contrary, counsel did object to questioning that could have elicited hearsay statements. Once the statements had been admitted into evidence under various hearsay exceptions, counsel used the statements as a means to draw out inconsistencies in the state's case. This was sound trial strategy. See *Strickland, supra; Bradley, supra*. As to Richardson's final allegation, we agree that defense counsel should have been aware of the state's motion for nondisclosure of witnesses. But once counsel became aware, the trial court granted her a continuance to prepare. We find no prejudice. See *id*. Richardson's second assignment of error is overruled.

(Doc. 7, Ex. 16, pp. 2–3).

The Supreme Court precedent setting forth the clearly-established federal legal principles applicable to the case-at-hand is *Strickland v. Washington,* 466 U.S. 668 (1984). In order to demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Id.* at 687. Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington,* 131 S.Ct. at 787 (citing *Strickland*, 466 U.S. at 689). Under the prejudice prong of the *Strickland* test, petitioner must show "a reasonable probability that, but for his counsel's unprofessional errors, the result of the criminal proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Id.* (citing *Strickland,* 466 U.S. at 694). A court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. 466 U.S. at 697.

In this case, petitioner has failed to demonstrate that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of the *Strickland* standard.

First, as to petitioner's claim that his trial counsel was ineffective for failing to file a motion to suppress eyewitness identification, the record supports the Ohio Court of Appeals' determination that there was no reasonable basis to do so. As petitioner argued on direct appeal, petitioner claims that counsel failed to challenge unnecessarily suggestive photo arrays shown to two eyewitnesses: Mary Brown and Thomas Knight. However, petitioner fails to set forth any basis on which the photo arrays were suggestive in the petition.

On direct appeal petitioner based his argument on the fact that neither witness identified him "when they were first shown the photo array containing a photo of Mr. Richardson." (Doc. 7, Ex. 14, p. 5). Although Brown—who testified that she witnessed the incident from her apartment window—did not initially identify petitioner in the photo array, she said that she did not pick him out immediately because she "did not want to make a mistake" and wanted to be one hundred percent sure. (Doc. 7, Transcript at PageID 822). She testified that later, after gathering her thoughts, she realized that she was certain the photo of petitioner was the man she saw outside her window. (*Id.* at PageID 853). Brown again examined the photographs with the prosecutor prior to trial and picked out petitioner's photo. (*Id.* at PageID 821–24). She also identified petitioner in court. (*Id.* at PageID 826). Brown testified that no one attempted to influence or coerce her. (*Id.* at 824–25).

Knight also did not identify petitioner when shown the lineup. Knight instead testified that he recognized petitioner the night of the shooting because he saw him with Lail a few weeks earlier. (*Id.* at 887). Therefore, Knight's identification was also not based on an improperly suggestive photo array.

13

Second, with regard to petitioner's claim that his counsel was ineffective for failure to object to hearsay testimony and eliciting prejudicial hearsay testimony on cross-examination, the Ohio Court of Appeals also reasonably found the claim without merit.  During trial, Nashonda Robinson, Lail's girlfriend, provided testimony concerning petitioner's possible motive for killing Lail.  Petitioner contends that in doing so, Robinson provided hearsay testimony that the Lail was upset with petitioner because petitioner sold him bad drugs.  As noted by the Ohio Court of Appeals, trial counsel did object to the testimony but was overruled.  (*Id.* at PageID 786–87).  Once the testimony was admitted, counsel attempted to use the testimony to highlight contradictions in the State's case.  For example, trial counsel argued that Mary Brown's testimony did not make sense if in fact petitioner sold Lail bad drugs:

> And so that's what draws [Brown's] attention outside, not the shooting.  And she hears someone say, you screwed me over for the last time.

> What does that tell you?  That whoever is arguing has a history here.  You've screwed me over for the last time.  Which means you've been screwed over before.  Okay.  And you're stopping it.

> So this is some type of relationship between people who—it's not been a good relationship, because you've screwed me over for the last time.  She told Detective Hilbert that night—morning or that was afternoon, I believe, that the person who said that was the shooter of Calvin Lail.

> Now this is where the State's case starts to fall apart a bit.  Right?  Because if the shooter is telling Calvin, you're not going to screw me over, how is it that Calvin is getting screwed over by the bad dope.  Because their story is that whoever provided the dope got $1,100 and gave them bad dope.  Well, guess what?  If you got $1,100 and you got bad dope, you were the one who won.  You didn't get screwed over.  Okay.

> And this person, again if you look at the phone records, whoever did this transaction was offering to try and make it right.  Maybe didn't want to lose a customer or client.

14

(Doc. 7, Transcript at PageID 1712–13).  Accordingly, because counsel did in fact object to the challenged testimony and the Ohio Court of Appeals reasonably found counsel's later use of the testimony to be sound trial tactics, petitioner's claim is without merit.

Finally, petitioner contends that defense counsel should have been aware of the state's motion for non-disclosure of witnesses.  However, as reasonably found by the Ohio Court of Appeals, petitioner was not prejudiced by any error because counsel was granted a continuance to prepare.  (*Id.* at PageID 709–14).

For the above reasons, petitioner is not entitled to habeas relief based upon Ground Two of the petition.

### C.  Grounds Three and Four are not cognizable or procedurally defaulted.

In Grounds Three and Four, petitioner contends that the trial court's admission of evidence of text messages and a photograph from a phone in petitioner's possession violated his constitutional rights.

In overruling the assignments of error on direct appeal, the Ohio Court of Appeals found that the evidence was properly admitted:

> In his third assignment of error Richardson argues that a photograph taken off a cellular telephone found in his possession should not have been admitted into evidence.  Richardson is correct that the state failed to lay a proper foundation for admission of the photograph.  No witness could identify whether the photograph contained an accurate depiction of its contents at the time the photograph had been taken, or even if the picture had been taken with Richard[son]'s cellular telephone.  See Evid. R. 901(A); *State v. Hill*, 12 Ohio St.2d 88, 232 N.E.2d 394 (1967).  But given the overwhelming evidence of Richardson's guilt, we hold that this error was harmless. Crim.R. 52(A); *State v. Condon*, 152 Ohio App.3d 629, 2003-Ohio- 2335, 789 N.E.2d 696 (1st Dist.),¶ 80.  Richardson's third assignment of error is therefore overruled.
>
> In his fourth assignment of error, Richardson argues that the trial court abused its discretion when it admitted text messages into evidence.  It did not.  A witness from Cincinnati Bell laid a proper foundation for the admission of the cellular telephone records as business records.  See Evid.R. 901(A) and 803(6); *State v.*

> *Jones*, 2nd Dist. No. 24077, 2011-Ohio-3275. The state also provided a separate and sufficient foundation for the admission of the content of the text messages. It produced evidence that the text messages were likely sent from Richardson and/or Lail, and also established hearsay exceptions where necessary. See Evid.R. 90l(A), 801(D)(2) and 803. This assignment of error is overruled.

(Doc. 7, Ex. 16, pp. 2–3).

To the extent that petitioner challenges the Ohio court's evidentiary ruling, his claim is not cognizable. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) In addition, this Court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Brooks v. Anderson*, 292 F. App'x 431, 437 (6th Cir. 2008) (quoting *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (internal quotation marks omitted)).

Petitioner has waived any claim of constitutional error because he failed to fairly present his constitutional claims to the state courts. "Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Fulcher v. Motley,* 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003)); *see also* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). Moreover, it is well-settled that in order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the factual and legal underpinnings of his claims to the state courts. *Fulcher,* 444 F.3d at 798; *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987).

A set of four guidelines has been developed for determining whether a claim was presented in such a way as to alert the state courts of the claim's federal nature. *McMeans,* 228 F.3d at 681. Under those guidelines, the fair presentation requirement is satisfied if the petitioner raised the federal issue in the state courts by (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in similar factual contexts; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Id.* (citing *Franklin*, 811 F.2d at 326).

In this case, petitioner failed to present the claims in Grounds Three and Four as constitutional issues on direct appeal. Instead, petitioner argued that the alleged errors each amounted to an abuse of discretion under state law. (*See* Doc. 7, Ex. 14, pp. 8–13). Petitioner did not rely on federal or state cases employing constitutional analysis, nor can the Court conclude that petitioner phrased his claim in terms of constitutional law or alleged facts well within the mainstream of constitutional law.

Petitioner did raise these claims as constitutional errors in his memorandum in support of jurisdiction on further appeal to the Ohio Supreme Court. (*See* Doc. 7, Ex. 18). However, petitioner was unable to satisfy the "fair presentation" requirement at that late juncture because the Ohio Supreme Court lacked jurisdiction to consider the constitutional issue, which had not been raised to or considered by the intermediate appellate court. *See* Ohio Const. art. IV, § 2(B)(2); *State v. Jones,* 211 N.E.2d 198 (Ohio 1965); *see also Rigdon v. Ohio Adult Parole Authority,* No. 1:08-cv-716, 2010 WL 3910236, at *9 (S.D. Ohio July 7, 2010) (Wehrman, J.) (citing *Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982)), *adopted,* 2010 WL 3910230 (S.D. Ohio Oct. 4, 2010) (Dlott, J.); *Harsh v. Warden, Chillicothe*

*Corr. Inst.,* No. 1:08-cv-433, 2009 WL 3378246, at *1, *9 n.8 (S.D. Ohio Oct. 15, 2009) (Beckwith, J.; Black, M.J.) (and cases cited therein).[2]

Because petitioner failed to provide the state's highest court with an opportunity to correct the alleged violations of his constitutional rights, he procedurally defaulted and has waived the claims raised in Grounds Three and Four absent a showing of cause and prejudice for the default in the state courts, or that a fundamental miscarriage of justice will occur if the claim is not considered herein. *See, e.g., Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262. No such showing has been made in this case. Therefore, petitioner's claims in Grounds Three and Four are waived and barred from review in this federal habeas proceeding.

**D. Ground Five is without merit:**

In Ground Five of the petition, petitioner contends that his convictions were not supported by sufficient evidence. On direct appeal, petitioner argued that the State failed to produce sufficient evidence for his Aggravated Robbery, Murder, and Felonious Assault convictions. With respect to the murder conviction, petitioner argued that no evidence was presented that petitioner was in possession of the cell phone that was in communication with Lail's cell phone and used to arrange the ambush. (*See* Doc. 7, Ex. 14, pp. 13–14). With respect to the aggravated robbery conviction, petitioner argued that the prosecution offered no evidence that Lail was robbed, nor any evidence that petitioner knowingly obtained or attempted to obtain personal property that belonged to Lail. (*Id.* at 14). Finally, petitioner argued that no evidence

---

[2] *Cf. Mayes v. Hudson,* No. 1:07-cv-315, 2010 WL 55963, at *9 & n.1 (N.D. Ohio Jan. 4, 2010) (in holding that the petitioner's "failure to raise [a] ground for relief . . . in the state appellate court on direct appeal procedurally defaulted that claim," the district court noted: "Even if [the] memorandum in support of jurisdiction in the Ohio Supreme Court could be read as having raised the claim . . ., [the petitioner's] failure to raise that claim in the appellate court resulted in its default," because it must be assumed from the Ohio Supreme Court's silence as to the reasons for denying the claim that it did not "ignore its own procedural rules and . . . enforced the procedural bar" prohibiting review of claims that are "not raised in the underlying appellate proceeding") (citing *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996)).

was presented indicating that petitioner had anything to do with the shooting of Knight.  (*Id.*).

The Ohio Court of Appeals overruled the assignment of error, finding it without merit:

> In his fifth assignment of error, Richardson claims that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.  This argument has no merit.  Two state's witnesses testified that they saw Richardson shoot Lail.  And there was testimony that a gun and a cellular telephone that Lail had taken to the parking lot were never recovered.  And while Richardson attempted to cast doubt on the credibility of the state's witnesses, there is no indication that the jury lost its way in choosing to believe the state's version of events.  This assignment of error is therefore overruled on the authority of *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541 and *State v. Jenks*, 61Ohio St.3d 259, 574 N.E.2d 492 (1991).

(Exhibit 16, pp. 3-4).

The clearly-established standard of review for evaluating the merits of constitutional claims challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979).  As the Supreme Court held in *Jackson*, because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *In Re Winship,* 397 U.S. 358, 363–64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson,* 443 U.S. at 319 (emphasis in original).

Under the *Jackson* standard, the State is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt.  *Id.* at 326.  Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969–70 (6th Cir. 1983).  It is the responsibility of the trier of fact to resolve conflicts in

testimony, to weigh the evidence and to draw reasonable inferences from the evidence.  *Jackson,*
443 U.S. at 319.  Consequently, the reviewing court is not permitted to reweigh the evidence,
reevaluate the credibility of witnesses, make its own subjective determination of guilt or
innocence, or otherwise substitute its opinion for that of the jury.  *See id.* at 318–19 & n.13; *see
also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567
F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction."  *Newman v.
Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th
Cir. 2000)); *see also Fisher*, 648 F.3d at 450.  Due process is satisfied as long as such evidence is
enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a
reasonable *speculation* that the petitioner is guilty of the charged crime.  *Newman,* 543 F.3d at
796–97 (and Sixth Circuit cases cited therein).

Moreover, federal habeas review of a claim challenging the sufficiency of the evidence is
even further limited.  As the Sixth Circuit explained in *Brown*, 567 F.3d at 205, the federal
habeas court is "bound by two layers of deference to groups who might view facts differently
than [the habeas court] would."   The federal habeas court must defer not only to the trier of
fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the
*state appellate court's* sufficiency determination as long as it is not unreasonable."  *Id.* (emphasis
in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011), *cert. denied*, 132 S.Ct.
1927 (2012); *Anderson v. Trombley*, 451 F. App'x 469, 474-75 (6th Cir. 2011), *cert. denied*, 132
S.Ct. 1152 (2012).  Therefore, as the Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary
> showings would be sufficient to convince us of the petitioner's guilt.  We cannot
> even inquire whether *any* rational trier of fact would conclude that petitioner . . .
> is guilty of the offenses for which he was charged.  Instead, we must determine

> whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Applying the double-layer deferential standard to the case-at-hand, the undersigned is convinced that the Ohio Court of Appeals' sufficiency determination is neither contrary to nor an unreasonable application of *Jackson*. In order to carry its burden of proof on petitioner's murder conviction, the prosecution had to prove that that petitioner caused the death of Lail as a proximate result of attempting to commit a felonious assault. *See* Ohio Rev. Code § 2903.02(B). (*See also* Doc. 7, Ex. 1, p. 3). Petitioner's aggravated robbery conviction required the prosecution to prove that while committing or attempting to commit a theft offense, petitioner had a deadly weapon on or about his person or under his control, and displayed, brandished, indicated possession or used the deadly weapon. *See* Ohio Rev. Code § 2911.01(A)(1). (*See also* Doc. 7, Ex. 1, p. 3). Finally, in order to sustain petitioner's felonious assault conviction against Thomas Knight, the prosecution had to prove that petitioner knowingly caused physical harm to Knight. *See* Ohio Rev. Code § 2903.11(A).[3] (*See also* Doc. 7, Ex. 1, p. 6). The jury received instructions on complicity for each of these charges.[4] (Doc. 7, Transcript at PageID 1824–25, 1827, 1832–33).

At trial, three eyewitnesses testified that they observed petitioner at the scene of the incident. Mary Brown observed the shooting from her apartment window. (*Id.* at PageID 807–15). She testified that she got a good look at petitioner, that petitioner looked at her and she looked right back at him during the incident, and she identified him in court as the shooter,

---

[3] Petitioner was also tried and convicted of violating Ohio Rev. Code § 2903.11(A)(2), which prohibits knowingly causing or attempting to cause physical harm to another by means of a deadly weapon. (*See* Doc. 7, Ex. 1, p. 7).

[4] Under Ohio law, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall . . . [a]id or abet another in committing the offense." Ohio Rev. Code § 2923.03(A)(2).

stating that she was one hundred percent sure as to what and who she saw.  (*Id.* at PageID 823, 825-27, 855, 843, 856).  Knight also testified against petitioner.  He testified that he recognized petitioner at the scene of the crime after having seen him at a cookout a couple weeks before the incident.  (*Id.* at PageID 887–88).  The third eyewitness, Desmond Criswell, testified that he accompanied petitioner to the scene of the incident and observed petitioner shoot Lail.  (*Id.* at PageID 1057, 1064–65, 1074).  Criswell further testified that two other men accompanying petitioner fired at Knight, who was shot during the incident.  (*Id.* at PageID 1072, 1073–74).  The prosecution also offered evidence that petitioner's cell phone was used to take photographs of guns similar to those used during the altercation and that petitioner used the same phone to text message a friend that he "had to kill a nigga over dope."  (*Id.* at PageID 1254–59).  Finally, as noted by the Ohio Court of Appeals, in support of the aggravated robbery conviction the prosecution offered testimony that Lail brought two cell phones and a gun with him to the incident and the gun and a cell phone were never recovered.  (*Id.* at PageID 892–93).

When viewing all of the evidence in the light most favorable to the prosecution, this Court concludes that the evidence was constitutionally sufficient to sustain petitioner's conviction.  The Ohio Court of Appeals' adjudication of petitioner's sufficiency-of-evidence claims involved a reasonable application of the *Jackson* standard and was based on a reasonable determination of the facts in light of the evidence presented at trial.

### E.  Ground Six is without Merit.

In Ground Six, petitioner contends that the Ohio courts reached decisions contrary to Supreme Court precedent in finding that his constitutional rights were not violated when the state trial court overruled his motion to suppress statements made to police after invoking his rights to remain silent and counsel.  Petitioner raised this claim on direct appeal.  In overruling the

22

assignment of error, the Ohio Court of Appeals ruled as follows:

> In his sixth and final assignment of error, Richardson claims that the trial court erred in overruling his motion to suppress statements that he had made to the police because he had invoked his right to counsel. The record indicates that the trial court granted Richardson's motion, in part, on this basis. Also, at trial the state elected not to play those portions of Richardson's interview that he now takes issue with. The assignment of error therefore has no merit and is overruled.

(Doc. 7, Ex. 6, p. 4).

After review of the record, the undersigned finds petitioner's claim without merit. As noted by the Ohio appeals court, petitioner's motion to suppress was granted in part by the trial court. Furthermore, at trial, the State did not play any of the comments made by petitioner after he invoked his right to counsel:

> [Prosecutor]: State's Exhibit 39 was the defendant's statement which was moved and admitted.
>
> And just for the record, because I don't think I stated it yesterday, but we played the portions of the interview up to the point where the Court ruled the defendant for the first time invoked his right to remain silent. We stopped there.
>
> We are aware that the Court in its initial ruling made other explicitly and very detailed rulings about statements after that as to others that could have been admitted not withheld because he either waived his right again and then reinvoked his right.
>
> It was a decision the part of the State to stop it where the Court said he first exerted his right to remain silent. That's the full extent of the interview that we have admitted.

(Doc. 7, Transcript at PageID 1589–90). Accordingly, the Ohio Court of Appeals reasonably determined that petitioner's claim was without merit and petitioner is not entitled to habeas relief based upon Ground Six of the petition.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas relief. Having found that Grounds One, Two, Five and Six of the petition are without merit and

Grounds Three and Four are not cognizable or procedurally defaulted, the petition should be **DENIED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.  In addition, a certificate of appealability should not issue with respect to the claims addressed on the merits herein in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further."  *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


   _s/ Stephanie K. Bowman_
   Stephanie K. Bowman
   United States Magistrate Judge

24

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

QURAN RICHARDSON,                         Case No. 1:13-cv-761
      Petitioner,

                                          Dlott, J.
      vs.                             Bowman, M.J.

WARDEN, SOUTHERN OHIO
CORRECTIONAL FACILITY,
      Respondent.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).